IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JULIO GONZALEZ,                          :
                        Petitioner,       :
        v.                               :          CIVIL ACTION
                                         :          NO. 14-6635
ERIC BUSH et al.,                        :
                        Respondents.      :

Jones, II    J.                                    September 22, 2016

**MEMORANDUM**

Julio Gonzalez ("Petitioner") has filed pro se objections, (Dkt No. 22 [hereinafter Objs.]), to the Report and Recommendation ("R&R") of the Honorable Thomas J. Rueter, United States Magistrate Judge. (Dkt No. 20 [hereinafter R&R].) The Government did not respond.

Upon consideration of Petitioner's Amended Petition, (Dkt No. 3 [hereinafter Am. Pet.]), the Government's Response thereto, (Dkt No. 18 [hereinafter Resp.]), and Petitioner's Reply Brief in Support of his Motion, (Dkt No. 19 [hereinafter Rep.]), and the full record, the Court overrules Petitioner's objections, adopts the Report and Recommendation, and dismisses Petitioner's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.

I.      **Background**

        a.  **Underlying Facts**

On January 28, 2005, a jury in the Philadelphia Court of Common Pleas found Petitioner guilty of attempted murder, aggravated assault, and possession of an instrument of crime. *Comm. v. Gonzalez*, CP-51-CR-109021 (Ct. Comm. Pl. 2003). On March 17, 2005, the Honorable John J. O'Grady sentenced Petitioner to fifteen to thirty years' incarceration, and five years' probation. At his trial and his sentence, Petitioner was represented by William T. Cannon, Esq.

1

("Trial Counsel"). Petitioner did not object to the Magistrate Court's recitation of the main facts

of this case. Upon independent verification of the record, the Court adopts the following facts:

> The evidence at trial established the following. On July 20, 2002, the victim in this case, Roshdi (Richie) Saleh, was outside of a 7-Eleven convenience store where he engaged in an argument with [Petitioner]. This incident was corroborated by the testimony of Muhammed Khalil who was with Saleh at the 7-Eleven store. Khalil testified about the incident at the preliminary hearing held on January 17, 2003. Khalil subsequently died on September 26, 2004 of reasons unrelated to this case. As a result, the relevant portions of Khalil's preliminary hearing testimony were admitted into evidence at trial. Khalil testified that when he and Saleh approached the 7-Eleven store, he saw petitioner giving them a look as though he wanted to argue with them. Saleh then exchanged words with petitioner. The incident ended with petitioner shaking hands with Saleh. (N.T. 1/26/05, at 51-57, 75-76; 1/27/05, at 24-25.)
>
> On July 21, 2002, Saleh and Khalil were riding scooters and they stopped at the corner of Ella and Louden Streets because Saleh's gas tank was falling off. While tightening the gas tank back on the scooter, Khalil saw petitioner approaching. Khalil said to Saleh: "Yo, yo, the Puerto Rican boy from the day before is coming towards us." Saleh looked up and petitioner began firing his gun at him from approximately two feet away; petitioner fired the gun six or seven times. Saleh was hit twice, once in the back of the head and once in the back of the shoulder. Petitioner continued to walk as he fired. Some of the shots were directed at Khalil, but he was not hit. (N.T., 1/26/05, at 57-59; 1/27/05, at 20-24, 32, 42-43.)
>
> Both Saleh and Khalil knew petitioner prior to the attack, each having previously seen him in their neighborhood. Khalil identified petitioner as the man who argued with Saleh at the 7-Eleven store and noted that the parking lot had been well lit. Khalil also identified petitioner as the man who shot Saleh on July 21, 2002. Saleh testified that it was petitioner who argued with him at the 7-Eleven store, and also confirmed that the lighting was "pretty good" in the parking lot and inside the store. Saleh, however, did not remember the shooting itself. He recalled riding his scooter on the night he was shot. The next thing he could recall was waking up in the hospital one month later. (N.T., 1/26/05, at 51-60, 64; 1/27/05, at 21-22, 25.)
>
> In addition to the testimony of the victim and Khalil, the prosecutor presented the testimony of Murad Muhammed who stated that, while driving his automobile on Louden Street, he observed his friend, Richie Saleh, laying on the ground bleeding. The lighting on the street was "bright." After a few minutes, he and another friend put Saleh in his car and drove to the hospital. (N.T., 1/26/05, at 32-35, 41.) Philadelphia Police Officer Randy Cole also testified. He stated he arrived at the scene of the shooting in his patrol car and escorted the car carrying Mr. Saleh. While at the hospital, Officer Cole spoke briefly with Muhammad Khalil. Khalil told the officer he "got a real good look at the offender." Khalil also reported that the assailant was a Hispanic male, 5'10", 200 pounds, eighteen to

twenty years old, with side burns and a thin mustache, a description which matched petitioner. (N.T., 1/26/04, at 104-06, 113-15, 119.)

As a result of the shooting, Saleh received wounds to his head and chest. He had multiple surgeries and suffered debilitating injuries. (N.T., 1/26/05, at 60-64.) Jeanne Pelensky, M.D., a specialist in traumatic brain injury rehabilitation, testified that petitioner had difficulty using his arms, had weakness in his legs and required a wheelchair to travel long distances. Dr. Pelensky also testified that Saleh suffered impairment of his cognitive function. She opined that it would be fully consistent with his injuries to remember events the day before he was shot, and in the minutes before the shooting, but not to recall the shooting itself. (N.T., 1/25/05, at 106-11.)

(R&R at 1-3.)

### b. Direct Appeal

On direct appeal, Petitioner was represented by Alston B. Meade, Jr., Esq. ("Appellate Counsel"). Petitioner raised two issues:

1. Where the complaining witness [Mr. Saleh] could not identify [Petitioner] for years after the incident until allegedly right before trial, and trial counsel did not seek a lineup because of this fact, yet the complainant was able to observe [Petitioner] at the preliminary hearing and on numerous occasions at the trial before he testified, did the trial court err in not excluding this critical identification evidence?

2. Did the trial court err in failing to give a [*Comm. v. Kloiber*, 106 A.2d 820 Pa. 1954, *cert. denied*, 348 U.S. 875 (1954)] or other cautionary charge where the deceased eyewitness [Mr. Muhammed Khalil] did not identify [Petitioner] immediately after the crime and the jury was not able to observe his testimony.

*Comm. v. Gonzalez*, No. 1260 EDA 2005, slip op. at 3 (Pa. Super. Ct. May 7, 2007). On May 7, 2007, the Superior Court rejected Petitioner's claims and affirmed the judgment of sentence. *Id.* First, the Superior Court found that there was "[n]othing in the record" to support Petitioner's "conclusion that Mr. Saleh's memory was aided by the Commonwealth or was the result of a 'prep' session." *Id.*, slip op. at 5 (citing N.T. 01/25/2005, at 134-35). In reviewing Mr. Saleh's testimony, the Superior Court found that the trial court's denial of Petitioner's motion *in limine* to preclude Mr. Saleh's testimony was not in error. *Id.*, slip op. at 13. The Superior Court explained:

> [M]r. Saleh testified that he knew [Petitioner's] face and had seen him before. Mr. Saleh did not once waiver in his identification of [Petitioner]. Moreover, we note that Mr. Saleh never identified [Petitioner] as his shooter; he identified [Petitioner] as the man with whom he had an altercation with the night before the shooting. We find no error with respect to the trial court's ruling that allowed Mr. Saleh to identify [Petitioner] as the man with whom he had an altercation the day prior to the shooting.

*Id.*, slip op. at 13-14 (citing N.T. 1/25/2005, at 20-28.) Second, the Superior Court found that a

*Kloiber* charge was not needed. *Id.* (citing *Comm. v. Harris*, 884 A.2d 920 (Pa. Super. 2005)).

The Superior Court found that because Mr. Khalil had "the opportunity to clearly view

[Petitioner], he never once equivocated, and there is no evidence he had a problem identifying

[Petitioner]," a *Kloiber* instruction was not rendered necessary. *Id.*, slip op. at 14.

On March 20, 2008, the Pennsylvania Supreme Court denied Petitioner's Petition for

allowance of appeal. *Comm. v. Gonzalez*, 945 A.2d 167 (2008).

### c.  Pennsylvania Post Conviction Relief Act  Claim and Appeal

On March 5, 2009, Petitioner filed a timely counseled petition for relief under

Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §§ 9541 *et seq.*

Petitioner was represented by Jerome M. Brown, Esq. ("PCRA Counsel"). In his PCRA Petition,

Petitioner argued that Trial Counsel and Appellate Counsel were ineffective for (1) failing to

seek a new trial on the weight of the evidence, (2) failing to seek to exclude the preliminary

hearing testimony of Mr. Khalil, (3) failing to seek an inconsistent statement curative instruction

relating to Mr. Khalil's testimony, and (4) failing to call a putative alibi witness, Ms. Lilian

Medina, Petitioner's sister-in-law. (Pet'r's PCRA Pet., Mar. 5, 2009.) On December 16, 2009,

the Commonwealth moved to dismiss Petitioner's PCRA Petition. (Comm. Mot. to Dismiss

Pet'r's PCRA Pet., Dec. 16, 2009.)

On November 19, 2010, Petitioner filed an Amended PCRA Petition. (Pet'r's Am. PCRA

Pet., Nov. 19, 2010.) In the Amended Petition, Petitioner raised the same four claims as his

original Petition. (Pet'r's Am. PCRA Pet. at ¶ 10(A)-(D).) Petitioner also raised a fifth claim that

4

Trial Counsel was ineffective for failing to seek a lineup or take other steps to sequester Petitioner from Mr. Saleh. (Pet'r's Am. PCRA at ¶ 10(E).) On November 29, 2010, the Commonwealth moved to dismiss the Amended Petition. (Comm.'s Mot. to Dismiss Pet'r's Am. PCRA Pet., Nov. 29, 2010.)

Petitioner filed a supplemental response to the motion to dismiss. (Pet'r's Supp. Resp. to Comm.'s Mot. to Dismiss, Feb. 28, 2011.) On September 23, 2011, a hearing was held before the PCRA Court to present an alibi witness that was not presented at trial. The Honorable John J. O'Grady, Jr. preliminarily denied every ground except for the alibi evidentiary issue. Following the Hearing, Petitioner filed a Supplemental PCRA Petition. (Pet'r's Supp. PCRA Pet., Oct. 13, 2011.) In this Supplemental Petition, Petitioner argued that Trial Counsel was ineffective for failing to seek a new trial when the Commonwealth solicited testimony from Mr. Saleh that he had seen Petitioner on the day of the shooting. (Pet'r's Supp. PCRA Pet.) The Commonwealth filed a Supplemental Motion to Dismiss. (Comm.'s Supp. Mot. to Dismiss Pet'r's Supp. PCRA Pet., Oct. 20, 2011.)

Following the Hearing, Petitioner filed a Memorandum of Law in Support of Granting PCRA Relief based upon his alibi claim. (Pet'r's Alibi PCRA Pet., Mar. 7, 2012.) On May 4, 2012, the Honorable Daniel J. Anders denied the PCRA Petition. Petitioner filed a Motion for Reconsideration of this Order. (Pet'r's Mot. for Reconsideration of PCRA Denial, May 24, 2012.) Petitioner filed further Objections. (Pet'r's Objs. to PCRA Denial, June 19, 2012.)

On June 22, 2012, Judge Anders dismissed Petitioner's PCRA Petition. On appeal to the Pennsylvania Superior Court, Petitioner argued that Trial and Appellate Counsel were ineffective for failing to: (1) seek a mistrial or a curative instruction in connection with Mr. Saleh's identification of Petitioner on the date of the shooting, (2) present an alibi defense, (3) seek a

new trial on the weight of the evidence, (4) seek to exclude the Preliminary Hearing testimony of

Mr. Khalil, (5) seek an inconsistent statement charge regarding Mr. Khalil's statements, (6) seek

a line up or take other steps to sequester Mr. Saleh. (Pet'r's 1925(b) Concise Statement of

Matters to be Complained of on Appeal, Aug. 2, 2012.) In his Opinion, Judge Anders explained

his reasoning as to each claim. First, Judge Anders explained that Mr. Saleh's identification of

Petitioner created no basis for a mistrial because the Commonwealth warned Trial Counsel about

the identification, Trial Counsel fully and aptly cross-examined Mr. Saleh about the

identification, and Petitioner suffered no prejudice from the identification since Mr. Saleh did not

identify Petitioner as the man who shot him. *Comm. v. Gonzalez*, CP-51-CR-109021-2003, slip

op. at 7-9 (Ct. Comm. Pl. May 20, 2012). Second, Judge Anders denied the alibi claim because

he found the testimony of Trial Counsel that neither Petitioner, nor any members of his family,

had ever mentioned the alleged alibi witness or the alibi during trial preparation, credible, and

found incredible the alleged alibi witness's testimony. *Id.*, slip op. at 9-11. Third, Judge Anders

found that the weight of the evidence did support a conviction. *Id.*, slip op. at 11-12. Fourth,

Judge Anders found that Mr. Khalil's Preliminary Hearing testimony was admissible because

Petitioner had the opportunity to fully cross-examine Mr. Khalil at the Preliminary Hearing, and

no "vital impeachment evidence" was unavailable for the cross-examination. *Id.*, slip op. at 13.

Fifth, Judge Anders found that an inconsistent statement jury instruction was not necessary

because a factual omission in a prior statement does not render subsequent statements

inconsistent for impeachment purposes. *Id.*, slip op. at 14. Furthermore, the inconsistent

"statement" was a police report, not a true, or adopted, statement of Mr. Khalil's. *Id.*, slip op. at

14-15. Thus, the "statement" could not have served as the basis for an inconsistent statement

instruction. *Id.*, slip op. at 15. Sixth, Judge Anders found that Trial Counsel was not ineffective

for failing to seek a lineup since Petitioner had no constitutional right to a lineup. *Id.*, slip op. at 16. Furthermore, Judge Anders posited that even if there had been a lineup, the outcome would have been the same since both Mr. Khalil and Mr. Saleh testified that they knew Petitioner from the neighborhood, had seen him multiple times, and had no equivocation in their identifications of him. *Id.*

On March 28, 2014, citing to Judge Anders's opinion, the Superior Court dismissed Petitioner's PCRA claim. *Comm. v. Gonzalez*, No. 1932 EDA 2012, slip op. at 1 (Pa. Super. Ct. Mar. 28, 2014). On August 21, 2014, the Pennsylvania Supreme Court denied Petitioner's request for allowance of appeal. *Comm. v. Gonzalez*, 97 A.3d 743 (2014).

On October 20, 2014, Petitioner filed a second *pro se* PCRA Petition. He alleged: (1) trial counsel was ineffective for failing to sequester the victim at trial; (2) trial counsel was ineffective for failing to object when the prosecutor committed supposed discovery violations regarding the victim; and (3) appellate counsel was ineffective for failing to raise a claim of prosecutorial misconduct on direct appeal. On April 15, 2014, the PCRA Court dismissed the second pro se PCRA Petition as being time barred. *Comm. v. Gonzalez*, CP-51-CR-109021-2003 (Ct. Comm. Pl. Apr. 15, 2015). Petitioner did not appeal the dismissal order to the Superior Court of Pennsylvania.

### d.  Petitioner's Habeas Claims

Petitioner filed an amended habeas pro se Petition with this Court on January 2, 2015. (Pet.) Petitioner raised seven claims for relief: (Claim One) Trial Counsel was ineffective for failing to seek a mistrial or request a curative instruction when Mr. Saleh identified Petitioner as the person he had seen on the day of the shooting; (Claims Two, Six, and Seven) the Trial Court violated Petitioner's rights in allowing said identification testimony; (Claims Three, Four, and

7

Five) the prosecutor violated the rules of discovery and sequestration of witnesses and Appellate

Counsel was ineffective for failing to raise this issue on direct appeal. (Pet. ¶ 12.) The

Government filed a Response. (Dkt No. 18.)

### e.   Magistrate Court's Report and Recommendation and Petitioner's Objections

The Magistrate Court found that all the claims were without merit or were procedurally

defaulted. (R&R.) To Claim One, the Magistrate Court found that there was no evidence to

disturb the PCRA Court's factual finding that the Commonwealth informed Trial Counsel

"weeks before the trial of the victim's identification of the petitioner as the person he argued

with on July 20, 2002 at the 7-Eleven store." (R&R at 14.) Further, the Magistrate Court

explained, Petitioner had the opportunity to cross-examine Mr. Saleh at trial. (R&R at 14.)

Moreover, Trial Counsel did make an oral motion *in limine* to preclude Mr. Saleh's

identification. (R&R at 14-15.) Thus, the Magistrate Court found this claim meritless. (R&R at

15-16.) To Claims Two, Six, and Seven, the Magistrate Court found that the Superior Court did

not unreasonably apply Supreme Court precedent when it found that Mr. Saleh's identification of

Petitioner was not based upon an impermissibly suggestive identification procedure. (R&R at

17.) The Magistrate Court found that Claims Three, Four, and Five were unexhausted and time

barred, and thus, procedurally defaulted. (R&R at 19-20.)

Petitioner raises eighteen objections. (Objs.) Objections I-VIII all stem from the

purported failure of the R&R to address the fact that Mr. Saleh identified Petitioner as the man

he had seen on the *day of* the shooting, not just the *day before* the shooting. (Objs. at 1-2.) In

Objections IX-XIII, XVIII, Petitioner argues that the Magistrate Court inappropriately relied on

the prosecutor's testimony in finding that the Commonwealth had provided notice to Trial

Counsel about Mr. Saleh's testimony and the Magistrate Court failed to address the fact that the prosecutor had represented to the Court and to Petitioner that she would not elicit identification testimony about the *day of* the shooting. (Objs. at 3-4.) In Objections XIV through XVII, Petitioner argues that the Magistrate Court failed to address Petitioner's argument that Mr. Saleh's identification of Petitioner was the result of an impermissibly suggestive process. (Objs. at 5-6.) The Government did not file a Response.

## II.    Legal Standards

### a.   Standard of Review

When objections are filed to the R&R of a Magistrate Court, the District Court must review *de novo* those portions of the R&R to which objection is made. 28 U.S.C. §636(b)(1). As for the portion of the R&R to which no objection was made, the Court reviews the R&R for clear error.

### b.   Procedural Default

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. §§ 2241-66 ("AEDPA") deals with the right of all persons in state custody, or in federal custody, to file a petition in a federal court seeking the issuance of a writ of habeas corpus. In the context of a prisoner in state custody, if such a writ of habeas corpus is issued by a federal court, the prisoner will be released from such state custody on the grounds that certain rights accruing to that prisoner pursuant to the United States Constitution have been violated; habeas corpus motions pursuant to AEDPA are the only possible means of obtaining this type of relief from state custody. *Benchoff v. Colleran*, 404 F.3d 812 (3d Cir. 2005); *Coady v. Vaughn*, 251 F.3d 480 (3d Cir. 2001).

By means of AEDPA, Congress also created a series of intentionally restrictive gate-keeping conditions which must be satisfied for a prisoner to prevail in his petition seeking the issuance of a writ of habeas corpus. The strict AEDPA gate-keeping procedures were enacted by Congress in order to support the policy of creating finality with respect to state and federal criminal prosecutions. One such gate-keeping procedure is the requirement of exhaustion. "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State..." 28 U.S.C. § 2254(b)(1); *see also Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 2010) (citing 28 U.S.C. § 2254(b)(1)) ("[A] district court ordinarily cannot grant a petition for a writ of habeas corpus arising from a petitioner's custody under a state court judgment unless the petitioner first has exhausted his available remedies in state court."). Petitioner must have "fairly presented" the federal habeas claims to the state courts. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Evans v. Court of Common Pleas, Delaware County, Penn.*, 959 F.2d 1227, 1231 (3d Cir. 1992) (citations omitted). "To 'fairly present' a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). A petitioner in Pennsylvania must appeal such claims to the Pennsylvania Superior Court. *Whitney v. Horn*, 280 F.3d 240, 250 n. 10 (3d Cir. 2002). Petitioner carries the burden of proving exhaustion. *Coady*, 251 F.3d at 488 (citing *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993)).

Where a claim was not exhausted in state court, it is said to be procedurally defaulted. To bring a procedurally defaulted claim in federal proceedings, Petitioner must demonstrate either (a) cause for the default and actual prejudice arising from the alleged violation of federal law, or

that (b) failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). First, to establish the "cause" requirement, Petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Werts v. Vaughn*, 228 F.3d 178, 192-93 (3d Cir. 2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). To establish the "prejudice" requirement, Petitioner must prove "not merely that the errors at...trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting this entire trial with error of constitutional dimensions." *Id.* at 193. Second, to establish a fundamental miscarriage of justice, Petitioner must demonstrate actual innocence. *Schlup v. Delo*, 513 U.S. 298, 324-32 (1995).

### c.  Merits Review

Where Petitioner's claims were adjudicated on the merits in state court, the AEDPA deference standard applies to this Court's review of the merits determination. *Rolan v. Coleman*, 680 F.3d 311, 321 (3d Cir. 2012). The AEDPA limits federal habeas review of state court judgments. *Werts*, 228 F.3d at 195. A petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim "resulted in a decision contrary to, or involved in an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). When a claim has been adjudicated on the merits in state court, federal habeas review is limited to the record before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398-99 (2011).

### d.  Ineffective Assistance of Counsel

The Sixth Amendment right to counsel "is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). To prove that counsel was ineffective, Petitioner must establish that (1) counsel's performance was constitutionally deficient, and (2) that deficiency prejudiced Petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance "requires showing that counsel made errors so serious that he or she was not functioning as the 'counsel guaranteed to the defendant by the Sixth Amendment.'" *Id.* In essence, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms. *Id.* at 688. Petitioner must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* at 690 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Prejudice requires showing that counsel's errors were serious enough to deprive the defendant of a fair trial. *Id.* at 687.

### III.  Discussion

Petitioner raises eighteen objections. These objections relate to Petitioner's Claim One, but to two distinct issues raised therein. First, over Trial Counsel's objection, Mr. Saleh was permitted to testify that he identified Petitioner from the day before the shooting. Petitioner contends that Trial Counsel was ineffective for failing to request a mistrial. The Report and Recommendation dealt with this issue directly. Second, there was a moment in the trial where Mr. Saleh testified that he saw Petitioner on the *day of* the shooting. This testimony contradicted all other testimony and evidence in the case. The prosecutor stated that she "misspoke," and re-posited the question to address the *day before* the shooting. Petitioner contends that Trial Counsel was ineffective for failing to request a mistrial due to this moment. The Report and

Recommendation did not directly address this issue. The Court addresses Petitioner's objections regarding each issue *de novo*.

As a preliminary matter, Claim One is properly exhausted. Petitioner brought the ineffective assistance of counsel claim relating to Mr. Saleh's identification to the Superior Court. (1925(b) Statement ¶¶ 1, 6.) As such, this claim may only be granted if (1) the state court's adjudication of the claim "resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) "the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). The Superior Court adopted Judge Anders's opinion; thus, this Court will review Judge Anders's opinion.

The Court begins its review by recounting the relevant facts. Prior to calling Mr. Saleh to the stand, the prosecutor represented to the Court, and to Petitioner, that she would not solicit testimony from Mr. Saleh identifying Petitioner from the day of the shooting:

> As I informed him [Trial Counsel] at that time, the victim [Mr. Saleh] will be able to testify as to what occurred the *day before*. He will also remember being on a scooter the night that this happened. He remembers the events leading up to the shooting. What he does not remember is the actual sights and sounds of the shooting, and *he is not going to identify [Petitioner] as the shooter*.

(N.T., 1/25/05, at 130-31 (emphasis added).) During trial, but prior to Mr. Saleh's testimony, Trial Counsel made an oral motion *in limine* to preclude Mr. Saleh from making any identification of Petitioner. (N.T. 1/26/05, at 2-28.) Trial Counsel argued:

> There's never been a time when the Commonwealth up through this year, 2005, has ever put me on notice that Mr. Saleh would be able to make an identification of my client. The identification that the Commonwealth intends to try to elicit this morning is to have him talk about what happened the night before, and then say, and the defendant is the person that we had the difficulty with.

13

Now, the problem with that is that first off, again, I had no notice of his apparent ability to testify to those events. There's never been a request for a lineup, because I never had any notice that he was in a position, neurologically, to testify to an identification. The victim, Mr. Saleh, has been here every day of the trial, there has been enumerable contacts between my client and Mr. Saleh visually...And Mr. Saleh has even been in the courtroom during jury selection, and maybe a little bit of testimony.

So, I mean there's no question about his ability to know that my client is the one who is charged in the case.

Now yesterday, we had a discussion about whether I was ever informed at any time about the ability of this witness to make an identification of my client in some form, and we talked about the conversation that I had with counsel...[a]round the 10th of January, and at that time counsel assured me that Mr. Saleh was not going to be able to make an identification of the shooter because of his condition. And what counsel told you yesterday was that at that time she did, however, tell me that Mr. Saleh was going to be able to identify my client as the person who he was involved with the night before, and I am telling the court that that never happened...I was never told that...[S]he just made no mention of it, at all, with regards to him testifying to what happened the night before...[T]here was never any notice that he was going to make an identification.

(N.T. 1/26/05, at 2-7.) The prosecutor responded:

First of all, to be utterly and unequivocally clear, Richard Saleh was never in the room for jury selection, and he has never been in the room during testimony during this jury trial...[O]ur understanding and our memory of that telephone conversation is completely opposite. And to that extent, and I have shown counsel that when we spoke, I have a note book, and I brought it to court today, wherein I keep it by the phone, and jot down sort of points in different cases, or things that I need to do.

When I spoke to Mr. Cannon, and I was going to send him a letter, but I figured that the faster communication was to discuss it over the phone, so I called him, he called me back. I have the actual sheet of paper that I had in front of me at the time, I had specific points to delineate. I have his telephone number, and I will offer it to show you...I discussed with him that the victim did have a memory.

***

I can also offer that I have spoken with the police in this case, and none of the detectives ever spoke to the victim, because given that he was shot in the head, nobody ever thought that this kid was going to be able to remember anything....[T]here's no interview from him...So, no one was talking to the victim about the facts in the case, or what was going on, he wasn't part of that process...Again, no one had to meet with the victim or did meet with the victim, given everything else...So nobody ever met with him until I met with him, and when I found that information out, I gave it to defense.

***

14

If counsel wants to speak to the victim, go ahead, but he's not going to identify him as the shooter, he's going to identify him from the day before. And as to any lineup issue, this is one of those situations where they don't know each other necessarily by name, but these are two young kids that hang out in the same neighborhood. So, as to any lineup issue, he had seen him numerous times face to face, but didn't necessarily know one another by name, but he had seen him, and could identify him from that earlier day.

Again, he's never going to say that he's the shooter. He's only going to say that he knew him, and that he almost had a fight with him that ended amicably, actually with them shaking hands.

(N.T. 1/26/05 7-15.) Prior to ruling on the motion, the Trial Court wanted to hear testimony from Mr. Saleh about whether or not Mr. Saleh knew Petitioner prior to the incident. Outside of the purview of the jury, Mr. Saleh was sworn in and testified that he had seen Petitioner a couple of times during the summer prior to the incident in the neighborhood. (N.T. 1/26/05, at 19-28.) Further, Mr. Saleh testified that he was not sitting in the courtroom for jury selection, motion practice, testimony or any portion of the trial. (N.T. 1/26/05, at 27-28.) Mr. Saleh testified that he had seen Petitioner with Trial Counsel and understood that Petitioner was the person on trial. (N.T. 1/26/05, at 26-28.) However, Mr. Saleh testified that he recognized Petitioner "[f]rom July of 2002," and not from "him being with counsel." (N.T. 1/26/05, at 28.)

The Trial Court denied the motion. (N.T. 1/26/05, at 2-28.) During the prosecutor's direct examination of Mr. Saleh, the following exchange occurred:

Q [THE COMMONWEALTH]: What were you doing on July 20, 2002?

A [MR. SALEH]: Went to pick my Mom up at the airport and went shopping that day. And then stood in front of my house with my girlfriend and my friends.

Q: Now Sir, is that the day you were shot, or is that the day before you were shot?

A: The day I was shot.

Q: Lets [sic] talk about the day before you were shot?

A: All right.

Q: Do you remember the day before you were shot?

A: Yes.

Q: And do you see anyone in the Courtroom who you also saw on the day that you were shot?

A: Yes.

Q: And where is that person?

A: The defendant.

(N.T. 1/26/05, at 48.) Trial Counsel immediately asked for sidebar. The following exchange

occurred:

MS. KIRN [THE COMMONWEALTH]: It was just a mistake.

MR. CANNON [TRIAL COUNSEL]: On your part.

MS. KIRN: Yes. I will clarify. I will redirect.

MR. CANNON: You think that's some minor thing that just took place after telling us repeatedly that he was not going to identify my client?

MS. KIRN: It is clearly in context that I just omitted the word before the accident and I will redirect that. I will even ask him, you didn't see him on the day that you were shot, did you? That is fine. It cures it. He's never going to say that he saw him when he was shot.

MR. CANNON: That is fine Judge. If Counsel can simply say before the jury, I am going to ask my question of you again, and then proceed as she just suggested.

THE COURT: All right.

(N.T. 1/26/05, at 50-51.) Following side bar, the prosecution conducted the following direct

examination of Mr. Saleh:

Q: Sir, I misspoke, may I ask you again? Did you see any – do you see anyone in the courtroom who you saw the day before you were shot, on July 20th, 2002?

A: Yes.

Q: And can you point to where that person is?

A.  (Indicating [Petitioner]).

16

(N.T. 1/26/05, at 51.) Of note, neither the prosecutor, nor Trial Counsel, directly asked Mr. Saleh the question the prosecutor suggested in sidebar ("You didn't see him the day you were shot?"). The record is clear that at no time during the trial did Mr. Saleh identify Petitioner as the shooter. In her closing argument, the prosecutor argued that the jury should believe Mr. Saleh's testimony because of the fact that he did *not* identify Petitioner as the shooter. (N.T. 1/27/05, at 104-05.)

The question for this Court is whether or not Judge Anders, and by extension the Superior Court, erred as a matter of federal law or as a matter of the application of fact when he determined that Trial Counsel was not ineffective for failing to request a mistrial due to the identification from the day before the shooting, or the mistakenly elicited identification from the day of the shooting. As a preliminary matter, Judge Anders's ineffective assistance of counsel standard did not contradict the applicable federal standard of *Strickland*. *Comm. v. Gonzalez*, CP-51-CR-109021-2003, slip op. at 5 (Ct. Comm. Pl. May 20, 2013) (citing *Comm. v. Vox*, 983 A.2d 666 (Pa. 2009)). Further, Judge Anders appropriately relied upon the Pennsylvania Supreme Court's standard governing the review of a denial of a motion for a mistrial. *Id.* (quoting *Comm. v. Chamberlain*, 612 Pa. 107, 30 A.3d at 422 (Pa. 2011).

As to Mr. Saleh's testimony about the day of the shooting, Judge Anders found that Trial Counsel's performance was not objectively unreasonable because the testimony was not a basis for a mistrial. *Comm. v. Gonzalez*, CP-51-CR-109021-2003, slip op. at 7 (Ct. Comm. Pl. May 20, 2013). Mr. Saleh never identified Petitioner as the shooter. *Id.* Further, Petitioner did not suffer any prejudice from the testimony because he was "provided ample opportunity to cross-examine Saleh at trial about his identification." *Id.*, slip op. at 8. Moreover, the Trial Court provided "appropriate cautionary instructions to the jury including instructions on inconsistent statements and credibility." *Id.*, slip op. at 8 (citing N.T. 1/28/05, at 23-26.) The Superior Court affirmed,

citing Judge Anders's rationale. *Comm. v. Gonzalez*, 1932 EDA 2012 (Super. Ct. March 28, 2014).

Reviewing this issue *de novo*, the Court finds that Judge Anders, and by extension the Superior Court, did not unreasonably apply federal law or the facts of this case. While the problematic question was a mistake, it was not grounds for a mistrial. Two questions earlier, the prosecutor had clearly asked Mr. Saleh to focus his testimony on the day before he was shot, rather than the day he was shot. (N.T. 1/26/05, at 48.) Both questions preceding the error targeted the day before. (N.T. 1/26/05, at 48.) The prosecutor explicitly told the jury she "misspoke" and rephrased the question with the correct date. (N.T. 1/26/05, at 51.) Mr. Saleh never testified that Petitioner was the shooter. All of the other evidence in this case reinforced the fact that Mr. Saleh could not identify Petitioner as the shooter. The prosecutor's line of questioning on direct to Mr. Saleh's treating physician concerned Mr. Saleh's inability to remember the "exact event" of the shooting. (N.T. 1/25/05, at 109-11.) The prosecutor's closing argument reinforced that Mr. Saleh was not able to identify Petitioner as the shooter. (N.T. 1/27/05, at 104-05.) Over and over throughout the trial, the jury was made very aware that Mr. Saleh could not remember the day of the shooting and could not identify Petitioner as the shooter. This one misspoken question and answer does not merit a mistrial. Thus, Trial Counsel cannot be deemed ineffective for failing to lodge a futile motion.

Furthermore, Petitioner suffered no prejudice from this moment as it was quickly corrected and all other evidence, and the Commonwealth's closing statement, reinforced that Mr. Saleh could not identify Petitioner as the shooter. Even if the jury was slightly confused in that moment, it is inconceivable that they remained confused by the end of the trial. Judge Anders's

finding that trial counsel was not ineffective for failing to request a mistrial was neither an unreasonable application of federal law nor an unreasonable application of the factual record.

As to Mr. Saleh's identification of Petitioner from the day before the shooting, Judge Anders found that Trial Counsel's performance was not objectively unreasonable because the testimony was admissible, and thus, not grounds for a mistrial. Judge Anders found that the Commonwealth provided Trial Counsel with sufficient notice of the identification testimony. *Comm. v. Gonzalez*, CP-51-CR-109021-2003, slip op. at 7-8 (Ct. Comm. Pl. May 20, 2013). In so finding, Judge Anders relied primarily on the evidence that "[t]he Assistant District Attorney even provided a notebook detailing the phone call she made to defense counsel with a specific notation regarding Salehs's ability to identify Defendant." *Id.*, slip op. at 8 (citing N.T. 1/26/05, at 7-15.) Judge Anders found that "Defendant provides no information about any additional investigation that defense counsel should have pursued, or any difference in trial strategy that would have had an impact on his defense at trial because of the identification." *Id.* For example, Judge Anders explained that a "line up request would have been denied because Khalil and Saleh both knew Defendant from the neighborhood and had seen him multiple times that summer." *Id.*, slip op. at 16. Further, Judge Anders found that Petitioner did not suffer any prejudice because Mr. Saleh did not identify Petitioner "as the man who shot him," Petitioner was afforded the opportunity to cross-examine Mr. Saleh about his testimony, and the Court provided the aforementioned cautionary instruction about witness statements. *Id.*, slip op. at 8. Moreover, even if there had been a lineup, the outcome would have been the same. *Id.*, slip op. at 16. Because Mr. Saleh knew Petitioner, he obviously would have identified him in the lineup. *Id.* The Superior Court affirmed, citing Judge Anders's rationale. *Comm. v. Gonzalez*, 1932 EDA 2012 (Super. Ct. March 28, 2014).

Reviewing this issue *de novo*, the Court finds that Judge Anders, and by extension the Superior Court, did not unreasonably apply federal law or the facts of this case. Petitioner objects that the Magistrate Court was overly deferential to the PCRA Court's finding that Trial Counsel was notified of the testimony. Petitioner is correct that the Magistrate Court relied on Judge Anders's factual findings, as they are required to do by federal law. Judge Anders stated that a motion for a mistrial due to this testimony would have been meritless, in part, because the prosecutor had notified Trial Counsel about the identification testimony on the June telephone call. In so finding, Judge Anders privileged the prosecutor's recollection of her phone call to Trial Counsel, over Trial Counsel's recollection. *Comm. v. Gonzalez*, CP-51-CR-109021-2003, slip op. at 7 (Ct. Comm. Pl. May 20, 2013). Just as it was for the Magistrate Court, this factual finding by the Superior Court is binding on this Court. 28 U.S.C. § 2254(e)(i); *Sumner v. Mata*, 449 U.S. 539, 547 (1981).

Even if it was not binding, the Court finds that the Superior Court based its decision on numerous factors. This factual finding was not dispositive of this ruling. Judge Anders also stated that the motion was meritless because Petitioner had the opportunity to cross-examine Mr. Saleh and because the Trial Court provided appropriate cautionary instructions to the jury about inconsistent statements. *Id.*, slip op. at 8. Most importantly, Judge Anders also explained that Petitioner suffered no prejudice due to the admission of the evidence. *Id.* Thus, the Court can affirm Judge Anders's holding even without adopting this factual finding.

Nevertheless, assuming *arguendo*, as Petitioner requests, that Trial Counsel, and not the prosecutor, had the better recollection of the contested phone call, the Court still finds that Petitioner suffered no prejudice. Trial Counsel stated that had he been notified, he would have

requested a lineup. (N.T. 1/26/05, at 4.) Thus, the Court considers whether Trial Counsel's proposed request for a lineup would have affected the outcome of the trial.

The Court finds that it would not. Mr. Saleh testified that he knew Petitioner from the neighborhood and had observed him multiple times that summer. (N.T. 1/26/05, at 19-28.) As the Trial Court explained, since Mr. Saleh testified that he knew Petitioner before the incident, "there would be no need for a lineup." (N.T. 1/26/05, at 18.)  Even if there had been a lineup, Mr. Saleh would have identified Petitioner. Even if the prosecutor never notified Trial Counsel about Mr. Saleh's ability to identify Petitioner, Petitioner suffered no prejudice.

Moreover, as the Superior Court explained on direct appeal, "the absence of a pretrial identification may go to the weight of the identification testimony, but it certainly does not render the testimony inadmissible as appellant would have us conclude." *Comm. v. Gonzalez*, 1260 EDA 2005, slip op. at 6 (Super. Ct. May 7, 2007) (quoting *Comm. v. Rush*, 562 A.2d 285, 289 (Pa. 1989)) (internal citations omitted). The testimony was always admissible; the issue is whether Petitioner had the full opportunity to attack the weight of the evidence. He did. Petitioner was fully able to cross-examine Mr. Saleh as to the weight of the evidence. (N.T. 1/26/05, at 71-101.) Thus, the admission of the testimony in no way prejudiced Petitioner.

Petitioner also objects that the testimony was not the result of Mr. Saleh's recollection, but rather, an overly suggestive process. The Pennsylvania Superior Court found that "[n]othing in the record supports [Petitioner's] conclusion that Mr. Saleh's memory was aided by the Commonwealth or was the result of a 'prep' session." *Comm. v. Gonzalez*, 1260 EDA 2005, slip op. at 5 (Pa. Super. Ct. May 7, 2007). This factual finding is binding on this Court. 28 U.S.C. § 2254(E)(i); *Sumner*, 449 U.S. at 547. The Court can find no error in the Superior Court's application of law or fact in reaching that conclusion. The prosecutor testified that she first

became aware that Mr. Saleh could identify Petitioner during a meeting with him just prior to trial. (N.T. 1/25/05, at 134-35.) Petitioner argues that this meeting occurred after Mr. Saleh had observed Petitioner and heard Mr. Khalil's testimony about Petitioner at the Preliminary Hearing. (N.T. 1/26/05, at 25-27.) The Court finds that any fears that Mr. Saleh's testimony was the result of seeing the Preliminary Hearing are ameliorated by Mr. Saleh's testimony that he knew Petitioner before the Preliminary Hearing. (N.T. 1/26/05, at 20-21, 24.) During the 7-Eleven incident, Mr. Saleh and Petitioner were face-to-face, two feet apart, in good lighting, for several minutes. (N.T. 1/26/05, at 21-23, 51-57.) Since Mr. Saleh knew Petitioner prior the Preliminary Hearing, and had ample opportunity to view him during the 7-11 incident, the Court cannot find that he was unduly influenced by seeing Petitioner at the Preliminary Hearing.

In conclusion, the Court overrules Petitioner's objections and adopts the Report and Recommendation.

## IV.   Conclusion

Petitioner's request for relief is denied. Because Petitioner failed to make a substantial showing of the denial of any constitutional right, the Court finds that reasonable jurists would not disagree with this Court's holding, therefore, a certificate of appealability shall not issue. *See, e.g.*, 28 U.S.C. § 2253(c)(2); *Santana v. United States*, 98 F.3d 752, 757 (3d Cir. 1996).

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. DARNELL JONES, II, J.